## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
### www.flsb.uscourts.gov

In re:                                        Case No. 08-19067-JKO

                                              Chapter 7

CREATIVE DESPERATION INC.,
a/k/a PETER LETTERESE &
ASSOCIATES INC,

            Debtor.
_____/

### AGREED RE-NOTICE OF RULE 2004 EXAMINATION DUCES TECUM
#### *(Date, Time and Location and Production Only)*

**CHURCH OF SCIENTOLOGY INTERNATIONAL,** ("CSI"), and **BRIDGE
PUBLICATIONS, INC.** ("BPI") (collectively, the "Creditors"), by the undersigned attorney,
and upon the request and agreement of examinee, will examine Dr. Thomas John Karas as
principal of MGSI, Inc. under oath on August 17, 2009 at 10:00 a.m. at the offices of Ruggirello,
Velardo, Novara & Ver Beek, P.C., 65 Southbound Gratiot, Mt. Clemens, MI 48043.  The
examination may continue from day to day until completed.  If the examinee receives this notice
less than 7 days prior to the scheduled examination date (or less than 10 days if examination is
taking place outside of Florida), the examination will be rescheduled upon timely request to a
mutually agreeable time.

      The examination is pursuant to Bankruptcy Rule 2004 and Local Rule 2004-1, and will
be taken before an officer authorized to record the testimony.  The scope of the examination shall
be as described in Bankruptcy Rule 2004.  Pursuant to Local Rule 2004-1 no order shall be
necessary.

The examinee is further directed to produce all documents described on **Exhibit "A"**, attached hereto pursuant to the previously issued subpoena for production on July 20, 2009, by noon on August 14, 2009 via e-mail as agreed to by the parties.

Dated: July 30, 2009.

Respectfully submitted,

ADORNO & YOSS LLP

By: /s/ Alan J. Perlman
      Alan J. Perlman
      Florida Bar Number: 826006
      Shirin Movahed
      Florida Bar Number: 031546
      350 East Las Olas Boulevard, Suite 1700
      Fort Lauderdale, Florida 33301-4217
      Phone: (954) 763-1200
      Fax: (954) 766-7800
      aperlman@adorno.com
      smovahed@adorno.com
      Attorneys for Creditors:
      CHURCH OF SCIENTOLOGY INTERNATIONAL
      BRIDGE PUBLICATIONS, INC.

## CERTIFICATE OF SERVICE

I HEREBY FURTHER CERTIFY that on this 30th day of July, 2009 a copy of the foregoing Notice was served via CM/ECF to participants who have consented to electronic notice, and the notice of electronic filing indicates that notice was electronically mailed to said parties. Notice was also sent by electronic mail to: Simeon D. Brier, Attorney for Creditors, Schwartz, Ness and Brody, SBrier@eadpdlaw.com.

I HEREBY FURTHER CERTIFY that on this 30th day of July, 2009 a copy of the foregoing was served via electronic mail to Ruggirello, Velardo, Novara & Ver Beek, P.C., 65 Southbound Gratiot, Mt. Clemens, MI 48043, c/o of Steevie Marrin, smarrin@rvnvlaw.com.

By: /s/ Alan J. Perlman
      Alan J. Perlman
      Florida Bar Number: 826006
      Shirin Movahed
      Florida Bar Number: 031546

350 East Las Olas Boulevard, Suite 1700
Fort Lauderdale, Florida 33301-4217
Phone: (954) 763-1200
Fax: (954) 766-7800
aperlman@adorno.com

### ***CERTIFICATION***

*I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court*

*for the Southern District of Florida and I am in compliance with the additional qualifications*

*to practice in this Court set forth in Local Rule 2090-1(A).*

EXHIBIT "A"

1.      Any and all documents regarding the use, existence, transfer, disposition, sale, purchase, or conveyance of the License Agreement between Peter Letterese & Associates, Inc. and any member of the Dane family, dated December 31, 1993 (attached hereto as Exhibit 1.)

2.      Any and all documents regarding the use, existence, transfer, disposition, sale, purchase, or conveyance of any License Agreement between Peter Letterese & Associates, Inc., Creative Desperation, Inc., Peter Letterese personally, and any member of the Dane family.

3.      Any and all documents regarding the copyright, license, publication or other use, of any of the works of Les Dane.

4.      All agreements between Thomas Karas and Peter Letterese, Peter Letterese & Associates, Inc., or Creative Desperation, Inc.

5.      All communications with Charles Franken.

6.      All communications to or from or concerning Peter Letterese, Peter Letterese & Associates, Inc., or Creative Desperation, Inc., from 2005 to the present.

7.      Any and all documents relating to the assignment referenced in the "Restatement Memorandum of Terms of January 2006 Assignment", attached hereto as Exhibit 2, including but not limited to the consideration for such assignment.

8.      Any and all documents regarding MGSI and MGSI, Inc., its officers, directors or shareholders, including corporate records.

9.      Any and all documents regarding GSI and or GSI, Inc. its officers, directors or shareholders, including corporate records.

10.     All records of payments to any member of the Dane family or their agents from 2005 to the present.

11.     All records of receipt of funds from the sale, licensing or use of any work of Les Dane.

12.     All records regarding any transfer of any right regarding the works of les Dane.

13.    All records regarding a corporation, business or entity doing business as BCSM or BCSM, Ltd.

14.    All contracts, agreements, or letters of understanding with Creative Desperation, Inc., Peter Letterese & Associates, Inc., or the officers directors or employees of those corporations.

15.    All Board Minutes, financial records and corporate records of any nature concerning Creative Desperation, Inc.

16.    All Board Minutes, financial records and corporate records of any nature concerning MGSI.

17.     All records relating to a power of attorney from Lois Dane to Peter Letterese, dated February 11, 1994.

18.    All communications with or concerning Barbara Fawcett.

19.    All communications with or concerning Ramona Letterese.

AGREEMENT

This agreement, made and entered into as of this  31st  day of December, 1993, by and between PETER LETTERESE & ASSOCIATES, INC., a Florida corporation, having its principal place of business at 5000 S.W. 148TH AVENUE, FORT LAUDERDALE, FL, 33330, to be referred to in this agreement as "PLA," and MRS. LOIS B. DANE, whose address is 6992 MAYBANK HIGHWAY, WADMALAW ISLAND, SC, 29487, to be referred to in this agreement as "LBD."

Since, LBD states that she is the owner of the rights to, titles to and interests in the copyrights of the materials described in Section 1 below, that have been registered in any part of the world.

Since, LBD states that she is the owner of the rights to, titles to and interests in the copyrights of the materials described in Section 1 below, for every part of the world where that have not been registered and/or published.

Since, PLA desires to become licensed to make exclusive use of all of LBD's rights, titles and interests.

Now, because of the above, for consideration (the exchange of something valuable) and with the exchanging of promises and guarantees, all of which are described below, the parties agree as follows:

PL                              LBD

Dane/PL&A, Inc.
Agreement
Page 2

Note: This document is being written as nearly as possible in plain English. There will be very few references to legal terms, but the agreement should be understood to carry the full weight and meaning that the appropriate legal terms would give it. Any terms that might be misunderstood by a non-lawyer will be defined in a section directly following this note.

DEFINITIONS: These are included to avoid any misunderstanding between LBD and PLA of the terms used in this document.

Artificial person: A corporation is considered by the law to be an artificial person.

Assignment: The legal transfer of some property, right, etc.

Assign: To transfer or hand over (some property, right, etc.) legally.

Breach: Exists where one party to a contract fails to carry out a term, promise, or condition of the contract.

Challenge to the copyright: To question formally the legality of the copyright or legal qualifications of the copyright holder.

Compensated usage: A use for which money, products or services have been received in exchange.

Copyright: The right to copy a piece of original work by an author or artist.

Cure: Used with the terms breach or default as in "cure the breach" or "cure the default." This means to correct whatever it was that breached the contract or whatever was considered a default of the contract. Usually, "cure" is used to indicate that the party that breached or defaulted on the contract has corrected the problem within the time

PL                          LBD

DanelPL&A, Inc.
Agreement
Page 3

limits of the contract. Generally, a "cure" would continue a contract that would

otherwise be terminated, because of this, if the time limit of the contract has run out,

the correction of the problem will not, usually, be considered a "cure" since the

contract will have already been terminated for other reasons.

Default: To fail to do something or appear somewhere when due.

Exclusive license: Permission to do or use something and the promise not to give anybody

else permission to do or use it in the same way.

Execution: The signing of a document. A document is executed when the party who is to

be bound by the document has signed the document. That means that if A and B draw

up a contract and A *executes* it but B does not, B can hold A to the letter of the

contract if B has an *executed* copy of the contract (if A never turns over the *executed*

copy to B, then B has no proof that A ever *executed* the contract). A, though cannot

hold B to the contract because B has not *executed* the contract.

Guarantee: A promise to replace, repair or return the money for an item purchased if. it is

not just the way the seller represented it to be.

Inability: To be totally unable, at any cost, to deliver what was promised.

Infringement: An invasion of the rights being licensed in this agreement.

Interests: Any share or part in properties, businesses, actions or activities owned by a

person.

License: Fact or condition of being permitted to do something.

Mark: The sign, writing or ticket put upon goods to distinguish them from others, usually

appearing as a "trade-mark."

Publication'in original fonn:  The publication of a book as a book.  The publishing of an

article as and article.  The conversion of a book into a workbook is not publication in

original form.  The legal term for "publication in original form" is "primary

publication. "

Receiver:  A person appointed by law to take charge of the property of another.

Registered:  Entered or recorded in some official register, record or list of similar items.

Rights:  Claims, titles or privileges that are lawful.

Royalties:  A share of the income or profits paid to the owner of a copyright for the .use of

that copyright.

Service mark:  The mark or symbol used by a business or organization to distinguish its

services from the services of others.

Sublicense:  Where one who has received a license to a copyright gives a part of those rights

to a third party.  .

Successor:  One who takes the place that another has left.  Usually it is following a death.

For corporations it is usually when one corporation assumes the rights and burdens of

another corporation.

Tenninate:  Bring to an end, put an end to, conclude.

Title:  A legal right to the possession of property.  A copyright is considered to be property.

Trademark:  The mark, picture, name, word, symbol, etc. owned and used by a

manufacturer or merchant to distinguish his goods from the goods of others.

Trustees:  A person or group who are appointed to manage the affairs of another individual,

business, etc.

PL          LBD

DanelPL&A, Inc.
Agreement
Page 5

Vnregistered:  Not entered or recorded in some official register, record or list of similar

Items.

Warranty:  A promise or pledge that something is what it is claimed to be.

Worldwide:  Spread throughout the world.

SECTION 1:  SUBJECT OF THE AGREEMENT

1.     The subject matter of this agreement is the complete body of literary and other

work created by the author, Les Dane, during his lifetime which are owned by LBD.  This

includes all published, recorded, written, filmed, taped, transcribed, oral, notated, outline,

stenographic, etc. work produced by Mr. Dane throughout the course of his life with the

exception of those rights licensed to Prentice Hall, Inc.  And, in the event that any such

rights so licensed to Prentice Hall; Inc;-shall revert to LBD, or are the subject of copyright

renewal, or otherwise become available, those rights will be included in and as part of the

subject matter of this agreement.

SECTION 2:  LBD'S WARRANTY OF TITLE

1.     LBD states and swears that she is the sole owner of the registered and

unregistered copyrights to Les Dane's total lifetime output as described in Section 1 above in

the United States and throughout the world.

2.     LBD also states and swears that she and her children, Lois Dane Richter,

Leslie Achilles Dane Jr., Elizabeth Dane Shook, John Bentz Dane, Jennifer Michelle Dane,

PL      LBD

and Malcolm Ezra Dane, have the right to file for any renewal of the copyrights that may be necessary during the course of this agreement in the United States and throughout the world.

3.    LBD shall furnish PLA with proof of the renewal of the copyrights or proof of the date by which the renewal must be filed.

4.    LBD also states and swears that she has the full right to enter into this agreement.

SECTION 3:  SCOPE OF THE LICENSE

1.    This agreement is specifically for the granting of a license to PLA for the use of the material in Section 1.

2.    This license is to be an exclusive license for the use of the Section 1 material throughout the world, in all languages, for the life of the copyright and the renewal copyrights..

3.    The interest contained within this license specifically excludes the rights being licensed to Prentice Hall, Inc. and not being available to PLA through LBD.

4.    The geographic area of the license is for worldwide rights not to be limited by any geographic, political or other boundary.

5.    The license specifically includes, but is not limited to, the right to:

    i.    The exclusive license, during the life of the copyright and the renewal copyrights, to all rights of every nature, throughout the world, whether now existing or hereafter developed in EFFECTIVE SALES CLOSING TECHNIQUES to the extent the undersigned own or control the

PL                                    LBD

editions, translations, audio and electronic, and the right to the use of

the name and likeness of Les Dane in connection with seminars,

lectures and other applications.

II.   The full and exclusive rights to STRIKE IT RICH SALES

PROSPECTING that would include:

(1)   Publishing in hard and soft cover,

(2)   Workbooks and any other derivative works,

(3)   Full electronic rights for all platforms including interactive

technology,

(4)   Full audio rights for all formats including interactive technology,

(5)   Full video rights for all formats including interactive technology,

(6)   Full use of the name and image of Les Dane as the author,

(7)   Full performance rights including seminars and lectures.

III.   The full and exclusive rights to LES DANE'S MASTER SALES

GUIDE that would include:

(1)   Publishing in hard and soft cover,

(2)   Workbooks and any other derivative works,

(3)   Full electronic rights for all platforms including interactive

technology,

(4)   Full audio rights for all formats including interactive technology,

(5)   Full video rights for all formats including interactive technology,

(6)   Full use of the name and image of Les Dane as the author,

PL _____          LBD _____

(7)  Full performance rights including seminars and lectures.

iv.  The full and exclusive rights to AMATEURS DON'T MAKE A DIME SELLING HARDGOODS: 14 STEPS TO BIG MONEY SUCCESS that would include:

(1)  Publishing in hard and soft cover,

(2)  Workbooks and any other derivative works,

(3)  Full electronic rights for all platforms including interactive technology,

(4)  Full audio rights for all formats including interactive technology,

(5)  Full video rights for all formats including interactive technology,

(6)  Full use of the name and image of Les Dane as the author,

(7)  Full performance rights including seminars and lectures.

v.  LBD grants to PLA the-right to be the exclusive world-wide representative of LBD and/or the estate of Les Dane for all rights to the works of Les Dane owned by LBD and/or the estate of Les Dane now and" in the future.  This grant of rights includes the full power to act in LBD and/or the Estate's behalf regarding the works of Les Dane, in copyright, in renewal copyright and in all contracts including but not limited to the Prentice Hall, Inc. contract.

vi.  The full and exclusive rights to any and all other works of Les Dane now owned by LBD and/or the estate and any and all works of Les

PL  LBD

Dane that may be discovered in the future that are not covered by the above grants.

VII.. Included in the rights being granted is the right to translate any and all of the works from the English original into any and all languages. It is understood that this right includes the right to publish that translation in any and all countries of the world.

6. PLA also obtains the right to sublicense the above rights.


## SECTION 4:  TRANSFER OF INFORMATION

1. Upon the execution of the agreement, LBD shall furnish PLA with the materials described in Section 1. The materials need not be the original man.uscripts, notes, etc. but must be exact duplicates of the originals. Photocopies and clear copies of tapes will be acceptable.

2. If there is a lack of clarity in any of the copied material, LBD shall furnish PLA with the original for a period long enough to allow the creation of a clear copy. Once the illegible or undeciferable section is clarified, the original shall be returned to LBD by PLA.


## SECTION 5:  TRADEMARKS AND SERVICE MARKS

1. The license also includes the right to use the name and image of Les Dane in any and all promotional materials, packaging, advertising and marketing campaigns for the products and services listed earlier in this paragraph.

PL                                              LBD

Dane/PL&A, Inc.
Agreement
Page 10

2.    Both LBD and PLA understand that although the surname of "Dane" itself cannot be trademarked unless it has come to have a unique secondary meaning, the full name of "Les Dane" can be trademarked.

3.    This license is to include the right to use the name and image of Les Dane in the trademarks and service marks of PLA so as to promote the products and services that directly use Les Dane's works.  Examples of such usage are: Les Dane Sales Seminars, Les Dane Sales Workshops, The Les Dane Method, Les Dane Video Workshops, etc.

4.    PLA will be solely responsible for the costs of such trademarking and service marking.

5.    PLA will be responsible for the defense of such trademarks and service marks.

6.    LED will not license or allow any other person or firm to trademark the name or image of Les Dane.  The pursuit of any violators of the trademarks or service marks will be conducted by PLA with the complete cooperation of LBD as is outlined in Section 9: Litigation, below.  It should be noted here that LBD is not liable for the costs of such litigation but only for help with information, testimony, etc.


SECTION 6:  THE EXCHANGE FOR THE LICENSE (CONSIDERATION)

1.    At the time of signing this agreement, PLA shall pay to LBD the sum of ONE dollar ($1.00).  This payment is not to be refunded for any reason other than LBD's inability to grant the rights described in this agreement.  This payment is not to be credited against any future royalties.  This payment is to be understood to be a full payment for the exclusive use of the materials described above.

PL    LBD



2(a).   PLA shall make royalty payments to LBD.  These payments will be two and one half percent *(2½ %)* of the received, seminar and consultancy generated, gross income and ten percent (10%) of the gross income received from any other compensated use of the licensed materials.  This would include but not be limited to all of the uses listed in Section 3 Paragraph 5 above.

(b).   These payments shall be made on a weekly basis for those weeks in which there is compensated usage.  At LBDts request a weekly notice of the compensated usage will be furnished by PLA to LBD.  A "week" being defined as  from 2:00pm Thursday to 2:00pm of the following Thursday.  The payment and/or the notice is to be mailed by first class United States mail on the Wednesday following the week-ending Thursday.  The payments and/or notice are to be mailed to the address of LBD listed above.

(c).   PLA shall also include in the income used to calculate the royalty payments all income received from any subsidiaries or-sublicensees of the Section 1 material.

SECTION 7:  BOOKKEEPING AND RECORDS

1.   PLA shall keep and shall require its subsidiaries and sublicensees to keep books and records that contain a complete and accurate record of all the data necessary to compute the royalties payable under this agreement.

2.   These books shall be available ,for inspection upon prior written notice of not less than five (5) business days at PLAts regular place of business during PLAts regular business hours.  The expenses of such a trip shall be borne by LBD.  LBD will be allowed to

PL                      LBD

copy the information in the books and records solely to ensure that proper royalties have been

paid.

3.    If PLA is given written notice more than five (5) business days in advance,

LBD will be allowed to have the Section 7 Paragraph 2 inspection done by a Certified Public

Accountant of LBD's choosing.  The costs of the accountant, any travel, etc. are to be paid

by LBD.

## SECTION 8:  COPYRIGHT RENEWAL

1.    LBD shall be responsible for maintaining the copyrights or renewal copyrights

on the materials in Section 1 in a current state.  To accomplish this, PLA as agent for LBD

shall retain an attorney specializing in copyright law.

## SECTION 9:  LITIGATION

1.    PLA shall have the right, at its own expense, to enforce the copyrights or

renewal copyrights against any person, natural or artificial, who infringes upon any of the

licensed copyrights or renewal-copyrights.  If PLA takes such action, it must consult with

LBD to determine strategy, tactics, timing and the compensation to be sought.  If there is a

challenge to the copyrights or renewal copyrights and if PLA chooses to pursue the challenge,

LBD is not committed to bear any cost of the litigation but may do so if she desires.  But,

LBD is committed to help with facts, documents, testimony and information as needed.  Any

compensation won shall have the expenses of fighting the challenge deducted and the balance

PL                    LBD

shall be apportioned as though it were "any other compensated use" income in Section 6 Paragraph 2(a).

2.    PLA shall also have the right, at PLA's expense, to defend (including, at its discretion, the taking of appeals) any action, suit or proceeding instituted against PLA based on any claim that any licensed product or service or its manufacture or sale constitutes an infringement of any copyrights or renewal copyrights of the United States or of another country.  LBD shall actively cooperate with and assist PLA 10 the defense of any such action, suit or proceedings and shall have the right to be represented by counsel at LBD's expense. LBD is not committed to bear any cost of the litigation but may do so if she desires.  But, LBD is committed to help with facts, documents, testimony and information as needed.

3.    In the event PLA elects not to proceed to restrain infringement of a copyright or renewal copyright  included within the licensed copyrights or renewal copyrights within six (6) months after PLA has received written notification from LBD of such infringement, LBD may, at her own expense, start an action to restrain such infringement.  The proceeds from such a suit, action or proceeding shall not be considered income under Section 6 Paragraph 2(a) and PLA shall have no claim against such proceeds.


SECTION 10: WARRANTIES EXPRESSLY NOT GIVEN

1.    Nothing contained in this document shall be construed by LBD or PLA as a guarantee or warranty on the part of the LBD or PLA with respect to the results to be obtained by the use of the copyrights or renewal copyrights licensed in this document.

PL                                    LBD

2.    Nothing contained in this document shall be construed by LBD or PLA as a guarantee or warranty on the part of the LBD or PLA that anything made, used or sold under the license in this document will be free from infringement of the copyrights or renewal copyrights by third parties.

### SECTION 11: NOTICE

1.    For notice to be effective it must be in writing and sent by United States mail, certified, return receipt requested, postage prepaid, to the address stated above for the recipient.

2.    Either party may notify the other, in the manner above set forth, of any other address to which notices may be addressed to it under this agreement.

### SECTION 12: TERMINATION

1.    If PLA becomes bankrupt and/or if the business of PLA is placed in the hands of a receiver or trustee, whether by the voluntary act of the PLA or otherwise, this agreement shall immediately terminate.

2.    Upon any breach of this agreement or default on the terms of this agreement by PLA, LBD will have the option to terminate this agreement after having given ninety (90) days notice in writing as described in Section 11 Paragraph 1 above.  LBD may terminate this agreement at the end of those ninety (90) days if and only if PLA has not cured the breach or default of the agreement.

PL    LBD

3.     PLA's failure to pay royalties as described in Section 6 Paragraphs 2(a-e) shall be considered a default and in such a situation the cancelling of the license will not end LBD's claim to the royalties owed.

4.     PLA may terminate the license upon six (6) months notice according to Section 11 Paragraph 1.

5.     After the agreement is terminated, all income from sublicensees in effect at the time of termination but continuing after termination, earned after the date of termination, shall continue to be paid as provided by this agreement.

## SECTION 13:  TERM OF THE LICENSE

1.     The license that is the subject of this agreement shall be for the life of the copyrights and renewal copyrights, as long as PLA pays a "minimum of one thousand dollars ($1,000.00) in royalty payments, as covered by this agreement, per calendar year.

## SECTION 14:  THE TERM OF THE AGREEMENT

1.     The term of the agreement is the same as the term of the license. That term is for the life of the copyrights and renewal copyrights, as long as PLA pays a minimum of one thousand dollars ($1,000.00) in royalty payments, as covered by this agreement, per calendar year.

## SECTION 15:  MISCELLANEOUS PROVISIONS

1.     The rights granted under this agreement shall be enforceable upon LBD, her

PL                          LBD

Dane/PL&A, Inc.
Agrèement
Page 16

successors in the ownership of the copyrights and anyone the copyrights_may be assigned to.
The rights granted under this agreement shall come into force upon PLA, its successors in the
ownership of the whole **business** or any assignees of the ownership of the whole business who
may acquire. this license as part of the transfer of the part of PLA's entire business to which
this agreement relates.  Prompt notification of any such assignment shall be given to the other
party to this agreement according to Section 11 Paragraph 1 above. .

      2.     No amendment or modification of this agreement shall be binding unless it is in
writing and signed by both parties or their properly authorized officer or representative.

      3.     This agreement, to the extent that it does not fall under the COPYRIGHT ACT
OF 1976 (17 United States Code Annotated, Sections 101-810), shall be construed according
to the laws of the State of Florida and is subject to the applicable tax laws of the United
States and any political subdivision of the United States.

### SECTION 16:  MEDIATION OF DISPUTES

      1.     All disputes that are not resolvable by the parties shall be submitted to non-
binding mediation by a mediator who is agreed upon by both LBD and PLA.

PL     . LBD

## SECTION 17: EXECUTION OF THE AGREEMENT

To show their agreement, the parties to this agreement have placed their original

signatures below and have caused this agreement to be fully executed as of the day and year

first written above.

_30 Dec '93_
Date

_3 Jan 94_
Date

_Lois B. Dane_
Mrs. Lois B. Dane

_[signature]_
Peter Letterese, Chief Executive Officer
Peter Letterese & Associates, Inc.

Ratified and agreed with respect to all Les Dane copyrights renewed and to be renewed:

_[signature]_                                    Dated _12-30_            , 19_93_
Lois Dane Richter

_[signature]_                                    Dated _12-30_            , 19_93_
Leslie Achilles Dane Jr.

_[signature]_                                    Dated _1_  _Dec_          , 19_3_
Elizabeth Dane Shook

_[signature]_                                    Dated _12-30_            , 19_93_
John Bentz Dane

_[signature]_                                    Dated _12-31_            , 19_93_
Jennifer Michelle Dane

_[signature]_                                    Dated _12-31_            , 19_93_