Tagged Opinion

**ORDERED** in the Southern District of Florida on _September 11, 2009_



John K. Olson, Judge
United States Bankruptcy Court

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

In re:

**CREATIVE DESPERATION, INC.** a/k/a
**PETER LETTERESE & ASSOCIATES,**

      Debtor.

_____/

Case No. 08-19067-BKC-JKO

Chapter 7

### ORDER AND MEMORANDUM OPINION GRANTING
### CHAPTER 7 TRUSTEE'S MOTION FOR SANCTIONS AND
### CONTEMPT AGAINST CHARLES D. FRANKEN [DE 148] AND
### DENYING FINAL FEE APPLICATION OF CHARLES D. FRANKEN, ESQ. [DE 190]

**THIS CASE is** before me on the Chapter 7 Trustee's Motion for Sanctions and Contempt

Against Charles D. Franken [DE 148] (the "Motion for Sanctions") and the Final Fee Application

of Charles D. Franken, Esq. [DE 190] ("Franken's Final Fee Application"). After reviewing the

pleadings filed in this case, together with the deposition transcripts and other exhibits submitted by

the parties in evidence, having considered and evaluated the testimony of witnesses, and heard

argument of counsel, and considered the entire record, I conclude that the conduct of attorney

Charles D. Franken and his law firm (collectively, "Franken") in this case was so egregious that

sanctions are required both to punish outrageous conduct and to protect the public from an unethical lawyer. I further refer the matter to The Florida Bar for the institution of additional disciplinary proceedings.

## FINDINGS OF FACT

### A.    Procedural background

1.    The Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") on June 30, 2008 [DE 1][1]. Franken represented the Debtor before the filing of its petition in various litigation.

2.    At the commencement of the Chapter 11 case, Franken applied to be appointed as counsel in the Debtor's chapter 11 proceeding [DE 5, 8, 32]. On an interim basis after the filing of the Debtor's Chapter 11 petition, Franken acted on behalf of the Debtor. I approved Franken's retention as counsel for the Debtor on a limited basis, and only then based upon certain representations of disinterestedness that were made by Franken at his retention hearing on July 31, 2008.

3.    The case was converted to a proceeding under Chapter 7 of the Bankruptcy Code by Order dated September 9, 2008 [DE 89] (the "Conversion Order"). The Conversion Order also denied as moot a Motion to Dismiss [DE 50] that had been filed by the Debtor on August 15, 2008. Shortly thereafter, the United States Trustee appointed Marika Tolz (the "Trustee") as the acting Chapter 7 trustee for the Debtor's bankruptcy estate (the "Estate") [DE 90].

---

[1]    I will refer to the record by the Court's document number either as **"DE ___"**, or **"DE ___ [page number(s)] and/or ¶ number(s)]."** I will refer to the Trustee's Trial Exhibits as **[Ex.-(exhibit number)]**.

Pursuant to Rule 201(d) of the Federal Rules of Evidence, I take judicial notice of all papers filed in this proceeding. Further, I take judicial notice of any other matters of public record admitted into evidence.

4.      The Trustee retained John Genovese, Esq. ("Genovese") and the law firm of Genovese Joblove & Battista, P.A., (collectively, "GJB") as general counsel to the Estate. I approved the retention on September 30, 2008. *See* [DE 125].

5.      The Trustee filed a Motion for Sanctions and Contempt against Franken on November 4, 2008 [DE 148].

6.      On December 8, 2008, Franken filed the Fee Application seeking approval for compensation as counsel for the Debtor for fees and costs in the amount of $35,099.50. *See* [DE 190].

7.      On January 26, 2008, the Trustee filed an objection to Franken's Fee Application [DE 200].

8.      On February 23, 2009, the Court entered an Omnibus Order Setting Pre-Trial Hearing and Continuing Hearing of Charles D. Franken's Fee Application and Trustee's Motion for Sanctions [DE 235] setting the Fee Application and the Sanctions Motion for joint hearing and ordering that the Motion for Sanctions was a contested matter governed by Part VII of the Rules of Federal Bankruptcy Procedure applicable to adversary proceedings.

**B.      Factual background**

9.      Franken is an attorney who practices in Broward County, Florida and purports to have thirty years experience practicing bankruptcy law.

10.      Pre-petition, he was counsel of record in litigation in which the Debtor was Plaintiff, including *Creative Desperation, Inc., etc. vs. Moxon et al.*; Case No. 08-CV-60984 Ungaro/Simonton (the "Due Process Case") and *Peter Letterese & Associates, Inc. vs. World Institute of Scientology Enterprises, et al.*; Case No. 04-61178-civ-Huck/O'Sullivan (the "Copyright Action"). By its terms, the Copyright Action sought injunctive relief with respect to the

-3-

infringement of its property rights.

11.    On June 30, 2008, Franken filed an application [DE 5] to be employed as counsel for the Debtor in certain specified litigation matters.  On the next day, July 1, 2008, Franken filed an *ex parte* application to be employed as general counsel for the Debtor [DE 7]. Therein, Franken attested in an affidavit that neither he nor his law firm represented any interest adverse to the Debtor (except for his prior representation of the Debtor), adverse to the estate, or to any creditor, party in interest, their attorneys or accountants, or any employees of the United States Trustee [DE 7, Ex. A]. Franken further attested that he and his law firm were "disinterested persons as required ny [sic] 11 U.S.C. § 327(a)."

12.    On July 25, 2008, Franken filed an Amended Application for Employment of Attorney on behalf of the Debtor. [DE 32]. Attached thereto was a "Supplemental Affidavit of Proposed Attorney for Debtor in Possession for Both Employment as General Counsel and to Proceed with Federal and State Litigation" (the "Supplemental Affidavit") [DE 32. Ex. A]. Franken again attested in that affidavit that he and his firm were disinterested persons pursuant to 11 U.S.C. § 327. Franken also made certain limited disclosures regarding his representation of the Debtor's principal, Peter Letterese ("Letterese"), in his individual Chapter 13 bankruptcy case.

13.    In his Supplemental Affidavit, Franken revealed for the first time that an entity named MGSI, Inc., had agreed to pay the Debtor's legal fees in connection with certain ongoing litigation in both state and federal courts [DE 32, Ex. "A" at ¶6].  The Supplemental Affidavit alleged that Franken had not represented MGSI or its principals in any proceeding, that MGSI was not a creditor of the estate, and that the previously undisclosed legal fees which MGSI had paid to Franken for services allegedly provided to the Debtor were not a loan to the Debtor [DE 32, Ex. "A" at ¶¶7-8].  Further, in the Supplemental Affidavit Franken alleged that MGSI is not in an adverse

-4-

position to the Debtor [DE 32, Ex. "A" at ¶9].

14.      I conducted a hearing on Franken's employment applications, as amended, on July 31, 2008. Franken testified at the hearing regarding his purported disinterestedness. He represented that MGSI was not in any way "adverse to the Debtor" and that it intended to only "provide legal fees to the Debtor." On several occasions, Franken testified that he did not represent MGSI and would not undertake representation of MGSI. Specifically, Franken represented that:

> MGSI is simply a third party, which I said last time, your honor, was a company that is simply funding the litigation and as I've been told, has taken the position it's not a loan. They have no obligation to repay it and if at the end of the case there is money to be paid, after all the creditors, all the administrative claims are paid, then MGSI would be paid.

[Ex-5D, p. 19, ln 10-18]. At no time during his testimony did Franken reveal that the Debtor had purportedly transferred all of its property rights to MGSI.[2]  Because the Debtor is a corporation which could only appear through counsel, and because no other counsel was on the scene, I permitted Franken to act for the Debtor under very limited conditions notwithstanding my concerns that his disclosures were inadequate and his apparent conflicts of interest were severe. *See* [DE 53].

15.      In fact, Franken failed to disclose what he would later claim was the true nature of MGSI's interest in the Debtor's assets, including the Copyright Action. He subsequently admitted that he represented MGSI by filing a notice of interest in the Copyright Case and RICO Case. *See* [DE 266, ¶50].

16.      On August 26, 2008, Franken filed a pleading in this case entitled "Plaintiffs [sic] Notice of Joinder of Plaintiff MGSI Inc. as Plaintiff" [DE 65] which had originally been filed in the District Court in the RICO Case. In it, Franken discloses for the first time (a) that he represented

---

[2]That troubling disclosure would emerge later.

MGSI in the RICO Case, and (b) that MGSI (and presumably Franken) contended that MGSI was "the holder of the rights from the Les Dane estate" which were allegedly the Debtor's principal assets. As is clear from my order entered August 28, 2008 [DE 70] (the "Limited Retention Order"), I had not granted any relief under the litigation-related application to employ Franken and Franken was not authorized to represent the Debtor in any non-bankruptcy litigation.

17.    Franken testified at trial that he never received a formal written waiver or consent from Letterese, Fawcett, or MGSI prior to undertaking their representation, even though he had represented the Debtor.

18.    Despite Franken's severely limited disclosures in this case, and presumably as a result of being unable to obtain authorization to act as counsel for the Debtor on an unrestricted basis, on August 21, 2008, and without any prior authorization, Franken filed a case in the District Court styled *Creative Desperation, Inc., f/k/a Peter Letterese & Associates, Inc. vs. Judge John K. Olsen* [sic]*, et al.*, Case No. 08-61341-CIV-Cohn/Seltzer (the "Bankruptcy Due Process Case"). In it, Franken sought on behalf of the Debtor a declaratory judgment and injunctive relief against me, attorney Ariel Fernandez (who represents the United States Trustee, and who was incorrectly identified in the complaint as "Assistant United States Trustee") and the Church of Scientology International ("CSI"). The Bankruptcy Due Process Case appear to have been nothing more than an improper attempt to circumvent the process of appeal to the District Court[3] from my decisions relating to Franken's employment. In the case, Franken asked the District Court to declare that the Debtor's basic bankruptcy due process rights had been denied, and to enter an injunction requiring me, among other things, to approve Franken's employment as counsel for the Debtor and to "direct

---

[3] Appeals from the Bankruptcy Court to the District Court are governed by 11 U.S.C. § 158 and Part VIII of the Federal Rules of Bankruptcy Procedure.

the respondents Judge and Trustee to perform their official duties properly."

19.    On August 26, 2008, and again without any prior authorization, Franken amended the Bankruptcy Due Process Case to include, among other things, an additional count for alleged violations of civil rights.  In the District Court's Order Denying Motion for Temporary Restraining Order (entered in the Bankruptcy Due Process Case), at Page 2, Judge Cohn denied the motion and stated that "(t)he Court concludes that it lacks subject matter jurisdiction to grant the relief sought in the motion, which is really an attempt to seek interlocutory review of an ongoing bankruptcy proceeding."  *Creative Desperation, Inc. v. Olsen,* 2008 WL 3979470, *reh. denied,* 2008 WL 4952468 (S.D. Fla. 2008).

20.    Notwithstanding Franken's failures to disclose gross conflicts of interest and his pursuit in the District Court of mandamus-like remedies, I approved the Debtor's retention of Franken on a limited basis in order to protect the Debtor's immediate interests in pending litigation. The Limited Retention Order, at page 7-8, expressly limited Franken's permitted filings to solely: (i) a RICO statement in the RICO Case; (ii) a scheduling order in the Due Process Case; (iii) responses to pleadings in the RICO Case; and (iv) responses to pleadings in the Due Process case.

21.    I ruled in the Limited Retention Order that all litigation commenced by Franken on behalf of the Debtor since the filing of the Debtor's Chapter 11 petition on June 30, 2008 was *ultra vires* [DE 70, p. 5].  That determination was not appealed and is now final, binding, and constitutes the law of the case.

22.    Therefore, Franken filed the following cases on behalf of the Debtor-in-Possession without authority, and while laboring under severe conflicts of interest: (i) the Bankruptcy Due Process Case; and (ii) *Peter Letterese and Creative Desperation, Inc. v. The Church of Scientology International, Inc., et al.*, Case No. 08-CV-61109 Zlock/Snow (the "RICO Case").

23.    Also without authority and while laboring under severe conflicts of interest, Franken filed the following pleadings: (i) Joinder of September 26, 2008 on behalf of MGSI in the Copyright Action and in the Due Process Case [EX - 7A, 7B]; (iii) Amended Complaint in the RICO Case [RICO Case, D.E. 35]; (iv) Motion to Dismiss and Disqualify Trustee and Counsel filed on 11/01/08 [DE 140]; and (v) Notice of Filing Restatement Memorandum of Terms of January 2006 Assignment [DE 16].

24.    Franken violated the express terms of the Limited Retention Order. Such violations were willful and constitute contempt of this Court.

25.    By Order entered September 9, 2008 [DE 89] (the "Conversion Order"), the Debtor's case was converted to a case under Chapter 7 of the Bankruptcy Code. On that same date, Marika Tolz was appointed Chapter 7 Trustee by the United States Trustee and became the only party with authority to act on behalf of the Debtor's estate.

26.    On or about September 2008, Franken (along with the Debtor's principal Peter Letterese) met with the Chapter 7 Trustee and her counsel. Franken represented to the Trustee and her counsel that the Copyright Action (pending in front of District Court Judge Huck) was critical and valuable because it represented an effort to recover based on the Debtor's copyright of a published book on sales techniques written by Les Dane. The Debtor has consistently alleged that this work was critically important to the Church of Scientology ("CSI") as part of what is alleged to be CSI's "brainwashing and indoctrination programs." The Debtor has consistently contended that this copyright has been infringed by CSI. During his meeting with the Trustee, Franken either asserted or ratified claims made by Letterese that the Trustee should immediately appear in the Copyright Action to prosecute litigation claims against CSI and related parties. The Debtor valued these claims in the hundreds of millions of dollars. At no time during his meeting with the Trustee

did Franken advise her that all of the Debtor's right, title and interest in all of the Debtor's assets had purportedly been transferred to MGSI.

27.     Franken failed to disclose to me or to the District Courts in the Copyright Action and the Due Process Case that the Debtor purported to have assigned all of its interests in the Copyright Action to MGSI in January 2006.[4]  In fact, in the Copyright Action the Debtor *continued to seek injunctive relief* as if it still owned the copyright.   Some three weeks after the conversion of the Debtor's case to Chapter 7, Franken filed naked joinders on behalf of MGSI in both the Copyright Action [Ex-7A] and the Due Process Case [Ex-7B], merely asserting in both cases that MGSI claimed some common interest in the subject matter of the action.

28.     If one were to believe, as Franken later asserted, that the Debtor had transferred all copyright claims to MGSI in January 2006, then Franken either knew or failed to perform any diligent inquiry which would have revealed that the Debtor had done so.  Were the purported and subsequently "disclosed" transfer real, then it necessarily follows that the Debtor had  no remaining litigation claims after the "transfer" to MGSI.

29.     Franken filed misleading documents both here and in the District Court regarding MGSI's interest in the Debtor's property.  MGSI was listed on a certificate of interested persons filed prior to the Debtor's bankruptcy petition in the Eleventh Circuit Court of Appeals in connection with an appeal in the Copyright Action [Ex- 11].  While Franken did not prepare that document, he was or should have been aware of it.   Although that certificate disclosed only that MGSI may claim some interest in the Copyright Action and the Debtor's assets, it is clear from Franken's testimony on this Motion that he was aware of a purported pre-petition transfer of assets

---

[4]As discussed below, I conclude that this "assignment" never occurred but was subsequently invented by Franken and Letterese when the Trustee's control of the copyright interests of the Debtor became inconvenient to Franken's, Letterese's and MGSI's interests.

to MGSI. His contention that any adverse interest that MGSI has to the Debtor was cured or ameliorated by MGSI's subsequent agreement to subordinate any repayment of monies advanced to the Debtor for legal fees to the repayment of other creditors completely misses the critical legal issues. First, Franken was required to but did not disclose all of his relationships with MGSI and any other party with claims or interests in the Debtor's assets. Second, Franken caused the Debtor to file Schedules and a Statement of Affairs which (apparently falsely) represented that the Debtor was the sole owner of the claims set forth in the Copyright Action. Third, even if it were true that the Debtor had transferred some interest in the Copyright Action to MGSI in 2006, Franken conducted no investigation of the transaction to determine (among other things) whether adequate consideration for the transaction had been given, a step particularly appropriate in light of the fact that no contemporaneous document exists which reflects this agreement.

30.    Peter Letterese was at all relevant times the principal shareholder of the Debtor. Letterese claimed to be owed prepetition wages by the Debtor. Franken represented Letterese individually in the filing of Letterese's Chapter 13 petition in this Court and represented Letterese in litigation in which the Debtor also had interests.

31.    On October 24, 2008, acting on behalf of Letterese individually, Franken filed a First Amended Complaint in the RICO Case which (a) added Letterese as a plaintiff in asserting claims which he had previously asserted on behalf of the Debtor alone – without any prior disclosure and without any consideration to the division of the claims between the Debtor and Letterese; and (b) added as defendants, not only me, but the Trustee, her counsel (Genovese Joblove & Battista, P.A., along with its partners John Genovese and Barry Gruher), and CSI's counsel (the law firm of Adorno & Yoss along with its partner Alan Perlman). The claims asserted against the Trustee and her counsel, aside from being baseless, are also improper as they violate hornbook bankruptcy law

that suit may not be filed against a fiduciary or her counsel without first seeking leave of court. *See*

*Barton v. Barbour*, 104 U. S. 126, 129, 26 L.Ed. 672 (1881).

32.     Franken's Final Fee Application demonstrates that Franken spent only approximately

four hours performing any sort of due diligence prior to filing the Amended RICO Complaint [DE

190].

33.     In the Amended RICO Complaint, Franken alleged "upon information and belief"

that I joined in a RICO conspiracy with the Church of Scientology International.  Franken testified

at trial that the information which formed this belief was that my ex-wife, Candy Olson, had

received campaign contributions[5] in her most recent reelection campaign from lawyers in Tampa

law firms which have represented CSI in other matters.  Franken testified that he had not undertaken

any independent investigation of this information, but instead relied entirely upon what Letterese

provided him and that such information was the only basis for the allegation that I joined in a RICO

conspiracy with CSI.

34.     Letterese testified at trial that he reviewed Candy Olson's campaign finance reports

to determine if any lawyers made contributions to her campaigns, but that such review had occurred

in December 2008, at least six weeks *after* Franken filed the Amended RICO Complaint.

35.     After carefully considering the candor and demeanor of Franken and of Letterese,

I find that Letterese's testimony on this point was truthful and that Franken's was not.

36.     Even if one were to assume that a campaign contribution made to a judge's then-

spouse was intended to influence a judge in a case brought two years after the campaign, it is a

reckless leap to allege, without further evidence, that legal rulings adverse to the complaining party

---

[5]Candy Olson was first elected to the Hillsborough County School Board in 1994 and was reelected in 1998, 2002, and 2006.

permit a conclusory belief that the judge has joined a racketeering conspiracy.

37.     Franken failed to conduct any factual due diligence prior to joining me, the Trustee, and her counsel in the Amended RICO Action.   Franken also failed to conduct any legal investigation before joining these parties.  Any such investigation would have disclosed that the *Barton Doctrine* – consistent federal law since 1881 – precluded any such lawsuit against the Trustee without first seeking leave of court.

38.     On November 1, 2008, Franken filed a Motion to Dismiss the Chapter 11[6] (sic) Case, Disqualify John Genovese and Barry Gruher, of the law firm of Genovese Joblove & Battista, P.A., and to remove Marika Tolz as Chapter 7 Trustee. *See* [DE 140].  Franken filed this motion (the "Motion to Remove Trustee") on behalf of the Debtor's stockholders, Letterese and Barbara Fawcett (a/k/a Barbara Letterese, hereinafter "Fawcett").

39.     By filing the Motion to Remove Trustee, Franken acted as counsel for Letterese and Fawcett, in direct conflict with his prior representation of the Debtor in a matter materially adverse to the Debtor.  Further, I find that by filing the Motion to Remove Trustee on behalf of Letterese and Fawcett, Franken violated the express conditions of the Interim Employment Order. *See* [DE 70].

40.     On November 5, 2008, Franken filed a "Notice of Filing Restatement [sic] Memorandum of Terms of January 2006 Assignment on behalf of the Debtor's stockholders, Letterese and Fawcett.  The Restatement Memorandum purports to restate the terms of an alleged January 2006 transfer which purported to transfer all of the Debtor's intellectual property rights. These intellectual and other property rights are the very same rights that were the subject of the Copyright Action and the RICO Case where Franken appears as counsel of record for the Debtor.

---

[6]As noted above, the Debtor's case was converted to Chapter 7 on September 9, 2008.

41.    In filing the Restatement Memorandum, Franken acted nominally as counsel for Letterese and Fawcett (in direct conflict with his prior representation of the Debtor and in a matter materially adverse to the Debtor) in an effort to assist perpetuating a fraud upon the Court.  Further, by filing the Restatement Memorandum on behalf of Letterese and Fawcett, Franken violated the express conditions of the Interim Employment Order [DE 70].

42.    Although Franken nominally acted as counsel for Letterese and Fawcett in filing the Restatement Memorandum, the real beneficiary of his actions was MGSI, whose interests on this matter were in direct conflict with his prior representation of the Debtor.

43.    Franken acknowledged at trial that he made "changes" to the document which became the Restatement Memorandum.  He claimed that he did not know how to use the Gothic typeface in which the final version of the Restatement Memorandum is printed.[7]

44.    Letterese testified at trial that Franken was primarily responsible for drafting the Restatement Memorandum and restating the terms of the purported assignment in legal form. Letterese testified that no other attorney or legal professional was involved in any way with drafting the Restatement Memorandum.  Letterese further testified that he relied upon Franken's services as an attorney to advise him whether it was appropriate to file the Restatement Memorandum.

45.    Franken testified that he filed the Restatement Memorandum only to "notify the court" that, contrary to the Debtor's schedules and his and Letterese's prior representations, such interests had been transferred.  Franken also testified that the Restatement Memorandum accurately reflected an actual, bona fide transfer.  Franken's testimony on these issues is not credible.  I find on the basis of the entire record before me that no person other than Franken provided legal advice

---

[7] All of Franken's pleadings in the case have been typed in a Courier typeface.

with respect to the Restatement Memorandum and that Franken, acting in his capacity as an attorney for Letterese, Fawcett, and MGSI, was responsible for the preparation and filing of the Restatement Memorandum.

46.     Franken acted in bad faith and with reckless disregard for The Rules Regulating The Florida Bar by among other things, (i) filing the Amended RICO Complaint without pursuing any due diligence; (ii) improperly joining me and the attorney for the United States Trustee in the Bankruptcy Due Process Case; (iii) amending the Bankruptcy Due Process Case; and (iv) filing the Motion to Remove Trustee.

47.     Franken stated, both in his written submission [DE 266, ¶ 15] and at trial that his independent judgment was ceded to Letterese in connection with this case, and that he "blindly follow[ed] the demands of the client." *Id.*   To the extent that these representations were true, Franken failed to exercise any independent judgment.  To the extent that these representations were not true, Franken's actions were willful.  Either way, his actions in this case require sanctions.  He violated his duties to his client, the Debtor in this case.  He failed to preserve the Debtor's property and instead acted to dissipate that property to MGSI.  He failed in the grossest possible ways to avoid conflicts of interest, and failed even to recognize the existence of such conflicts.  He failed to exercise even the most basic due diligence and asserted claims which are patently improper.  He misrepresented facts and the law to this Court.  He abused the legal process by filing frivolous litigation.  And it appears that he actively participated in a fraud on this Court by preparing and filing false statements with respect to the purported transfer of interests to MGSI.

48.     Notwithstanding all of this, Franken contends that no sanction is required.

49.     Pursuant to her Motion for Sanctions, the Trustee has requested reimbursement of attorneys' fees and costs incurred as a result of Franken's sanctionable conduct.  Trustee's counsel

has submitted a Statement of Professional Fees & Costs Attributable to Charles D. Franken's Sanctionable Conduct [Ex-20], which the Trustee affirms represents legal fees caused by Franken's malfeasance. The Court accepts the testimony of John H. Genovese ("Genovese"), the Trustee's counsel, that efforts to investigate the actions taken by the Debtor with Franken's assistance,[8] meet deadlines in pending actions filed while Franken was laboring under a conflict of interest, and respond to motions filed by Franken on behalf of parties who were adverse to his client, the Debtor, resulted in significant damages to the estate.

50.    At trial, Genovese conceded that the portion of the fees relating to the preparation of an adversary complaint filed by the Trustee on June 22, 2009 (Adv. Pro. No. 09-01649-BKC-JKO) (the "Fraudulent Transfer Complaint") should not be attributed to Franken as the Trustee has retained GJB to pursue the causes of action in the Fraudulent Transfer Complaint pursuant to court-approved contingency retention. *See* [DE 227]. The Court accepts representations at trial by Genovese that these fees are to be excluded from the measure of fees incurred by the estate in connection with Franken's malfeasance.[9]

51.    With the exceptions listed below, I find that the remaining fees sought by GJB are reasonable and a proper measure of the expense incurred by the Estate directly related to Franken's filing of (i) the Bankruptcy Due Process Case; (ii) the RICO Case; (iii) the Amended RICO complaint; (iv) the Joinder of September 26, 2008 on behalf of MGSI in the Copyright Action and in the Due Process Case [EX - 7A, 7B]; (v) Amended Complaint in the RICO Case [RICO Case,

---

[8]Both Letterese and Franken continued to assert that these actions were meritorious and had substantial value.

[9]Fees in the amount of $8,845 incurred by the estate in connection with preparing the Fraudulent Transfer Complaint and fees in the amount of $5,455.50 incurred by the estate in connection with negotiations with third parties to sell certain assets of the estate, totaling $13,940.00, were withdrawn by the Trustee from the fees sought to be recovered from Franken.

D.E. 35]; (vi) Motion to Remove Trustee [DE 140]; (vii) Notice of Filing Restatement Memorandum of Terms of January 2006 Assignment [DE 16]; and (viii) in connection with the Trustee's costs (as may still be undetermined) with respect to prosecuting the Motion for Sanctions and objecting to the Final Fee Application, including the Trustee's costs in participating in a mediation requested by Franken.

52.    I therefore find that GJB's remaining requested fees of $103,939.50, with the exceptions listed below, are a reasonable reflection of the expenses incurred by the Estate as a result of Franken's conflicted representation.  Additionally, the Court reserves jurisdiction for the amount of additional fees incurred by the Estate in prosecuting the Motion for Sanctions and that may additionally form part of the reasonable estimate of expenses incurred by the Estate as a result of Franken's conflicted representation.

53.    GJB's remaining requested fees of $103,939.50 shall be reduced by: (1) $2,782.50 for a 09/18/08 charge of 5.00hr for "Extensive review" because the description of work performed is impermissibly vague; (2) $2,625.00 for a 09/25/08 charge of 5.00hr because the "telephone conference" reference gives insufficient detail for the Court to determine the appropriateness of the charge and there is no way for the court to determine what portion of the five-point-zero-zero hours is attributable to the telephone conference; (3) $525.00 for a 09/29/08 charge of 1.00hr for a letter "in response to lengthy letter received" but not giving a basic description of what the letter regarded; (4) $525.00 for a 09/30/08 charge of 1.00hr because, while the "Work on motion to enforce automatic stay" item is specific, the "review documents" and "attention to case issues" items listed are vague and there is no way for the court to determine what portion of the one-point-zero-zero hours is attributable to the vaguely-described items; (5) $1,050.00 for a 10/02/08 charge of 2.00hr for a "lengthy conference call" but not giving a basic description of what the conference call

-16-

regarded; (6) $2,730.00 for a 10/15/08 charge of 5.20hr because "Review status of multiple litigation matters" is vague and there is no way for the Court to determine what portion of the five-point-two hours is attributable to the vague item; and (7) $1,188.00 for a 04/24/09 charge of 2.20hr because there is no basic description of what the meeting regarded. The remaining requested fees of $103,939.50 are therefore reduced to $92,514.00, and these reductions are without prejudice to seeking to recover excluded amounts from the estate by way of a later fee application. I reserve jurisdiction to review and make further rulings on these line-items.

54.    While monetary sanctions are appropriate and required to compensate the estate for the expenses incurred as a result of Franken's conduct, those sanctions alone are inadequate. Franken's violations of the Rules Regulating The Florida Bar are such that his continued practice of law in this Court poses a danger to the public and to the administration of justice. He will accordingly be suspended from the practice of law in this Court for a period of one-hundred eighty (180) days. This suspension period will commence thirty (30) days after the entry of this order to allow Franken to make appropriate preparations for the suspension. Franken may reapply for authorization to practice in this Court by application filed in this case but only upon a showing that he has earned at least thirty (30) continuing legal education credits in ethics *after* the suspension commences.

## CONCLUSIONS OF LAW

### A.    Jurisdiction, parties & venue

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157, and 11 U.S.C. § 105. This is a core proceeding pursuant to 28 U.S.C.157(b)(2)(A). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409 as the Chapter 11 voluntary bankruptcy case of the Debtor was properly filed in this District and was later converted to a proceeding under Chapter 7

of the Bankruptcy Code.

**B.      The Bankruptcy Court has authority to impose sanctions**

Federal courts, including bankruptcy courts, possess inherent authority to impose sanctions against attorneys and their clients. *In re Evergreen Security, Ltd.*, 570 F.3d 1257 (11th Cir. 2009). Inherent power of court may be invoked even if procedural rules exist which sanction the same conduct. *In re Steffen*, 406 B. R. 148 (Bankr. M.D. Fla. 2009).  Moreover, it is long settled that courts possess inherent authority to initiate contempt proceedings for disobedience to their orders. *Young v. United States ex rel. Vuitton et Fils S. A.*, 481 U. S. 787, 798 (1987). The fact that rules such as Fed.R.Civ.P. 11 or Fed. R. Bankr.P. 9011 have been promulgated by Congress does not displace a court's inherent power to impose sanctions for a party's bad faith conduct. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 46 (1991); *Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.*, 57 F. 3d 1215, 1224 (3rd Cir. 1995).

The inherent power to sanction may be broadly applied: "[W]hereas each of the other mechanisms reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses." *Id.*  Section 105 of the Bankruptcy Code provides that "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Section 105 further "authorizes the Bankruptcy Court, even sua sponte, to take any action necessary or appropriate to enforce or implement orders of the Court or the Rules or to prevent an abuse of process." *In re GGC Associates, Ltd.*, 178 B. R. 862 (Bankr. M.D. Fla. 1995).  Furthermore, in *Evergreen Security*, the Eleventh Circuit also concluded that sanctions imposed under the Bankruptcy Court's inherent power are not affected by the safe harbor provisions of Fed. R. Bankr. P. 9011, but are instead conditioned upon a finding of bad faith. 570 F.3d at 1273; *In re Walker*, 532

-18-

F. 3d 1304, 1309 (11th Cir. 2008). "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Id.* (internal citations omitted). "If particularly egregious, the pursuit of a claim without reasonable inquiry into the underlying facts can be the basis for a finding of bad faith." *Id.* at 1273-74, *citing Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998); *see also Jones v. Int'l Riding Helmets, Ltd.*, 49 F. 3d 692, 695- 96 (11th Cir. 1995) (finding that a court must determine whether a reasonable inquiry was conducted prior to the filing of a pleading); *In the Matter of Med. One, Inc.*, 68 B. R. 150, 152 (Bankr. M.D. Fla. 1986) (finding that failure to make a reasonable inquiry into whether a filing alleged valid claims was sanctionable).

Franken acted in bad faith by, among other things, (i) filing the Amended RICO Complaint without pursuing any significant due diligence; (ii) improperly joining the Court and the attorney for the United States Trustee in the Bankruptcy Due Process Case; (iii) amending the Bankruptcy Due Process Case; and (iv) by filing of the Motion to Remove Trustee. Accordingly, the foregoing monetary sanctions will be imposed consistent with the Court's inherent authority pursuant to Section 105(a) of the Bankruptcy Code and consistent with the purposes of sanctions pursuant to Section 105 of the Bankruptcy Code. *Jove Engineering, Inc. v. Internal Revenue Service*, 92 F. 3d 1539, 1557 (11th Cir. 1997); *In re Bryer*, 386 B. R. 895, 899 (Bankr. S.D. Fla. 2008).

**C.  Franken's representation of the Debtor was rife with conflicts, and such conflicts were further compounded by Franken's later representation of parties adverse to the Debtor.**

Conflicts of interest are prohibited by Sections 327(a) and 328(c) of the Bankruptcy Code, 11 U.S.C. §§ 327(a) and 328(a). These provisions create an ongoing duty on the part of all professionals hired by the estate to avoid conflicts of interest. Sections 327(a) and 328(c) apply to

professionals retained by debtors-in-possession because a Chapter 11 trustee would have to comply with §327, and §1107(a) gives a debtor-in-possession rights and responsibilities of a trustee. *In re Al Gelato Continental Desserts, Inc.*, 99 B. R. 404, 406 (Bankr. N.D. Ill. 1989).

Section 327(a) acts prospectively, providing that "the trustee, with the court's approval, may employ one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." In that connection, the word "trustee" applies to a debtor in possession. 11 U.S.C. § 1107; *In re Met-L-Wood Corp.*, 115 B. R. 133, 135 (N.D. Ill. 1990); *Matter of PHM Credit Corp.*, 99 B. R. 762, 766 (E.D. Mich. 1989).

To implement this provision, Bankruptcy Rule 2014 requires that orders to approve the employment of attorneys shall be made only pursuant to an application which "shall state the specific facts showing ... to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants ...," and is accompanied by an affidavit of the person to be employed "setting forth the person's connections with the debtor, creditors, or any other party in interest ..."

Franken failed to properly disclose his relationship with MGSI, a party which he either knew or should have known had material interests adverse to the Debtor, including a latterly-disclosed claim to own substantially all of the Debtor's assets.[10]  Franken's conflict of interest precluded him from representing the Debtor in any capacity during the pendency of the Chapter 11 case.

Franken's Supplemental Affidavit and representations to this Court on July 31, 2008, regarding MGSI's interest in the Debtor and the Debtor's assets were grossly incomplete and

---

[10]Franken's role in the creation of the Restatement Memorandum is, as found above, highly suspicious.

willfully misleading.   Franken merely disclosed that MGSI had agreed to pay the Debtor's legal

fees in connection with certain ongoing litigation in state and federal courts [DE 32, Ex. "A" at ¶6];

that Franken had not represented MGSI or its principals in any proceeding; that MGSI was not a

creditor of the estate, and that the funds paid by MGSI to the Debtor were not a loan to the Debtor

[DE 32, Ex. "A" at ¶¶7-8].  Franken alleged in the Supplemental Affidavit that MGSI was not in an

adverse position to the Debtor [DE 32, Ex. "A" at ¶9].  These disclosures were woefully incomplete

and grossly misleading.

        After Franken's authority to act on behalf of the Debtor's estate terminated by virtue of the

conversion of the case to Chapter 7 and the automatic appointment of the Trustee, Franken openly

represented Letterese and Fawcett, shareholders of the Debtor, and MGSI.  He did so in matters

directly adverse to the interests of the Debtor, his prior client.   In fact, Franken's pre-petition

representation was conflicted: he was being paid by MGSI while purporting to represent the Debtor,

a fact not disclosed in his initial disclosures.  Franken's attempts to be employed as counsel for the

Debtor, as well as any action taken by Franken pursuant to the limited capacity granted to him by

the Court pursuant to the Limited Employment Order, were inappropriate given his undisclosed

conflicts of interest.

**D.      Disgorgement of fees is warranted based upon Franken's inadequate disclosures and
          his failure to comply with applicable provisions of the Bankruptcy Code and Rules**

        Bankruptcy courts have broad and inherent authority to deny any and all compensation when

an attorney fails to comply with the provisions of §§ 327, 329, 330 and 331. *Franke v. Tiffany* (*In*

*re Lewis*), 113 F. 3d 1040, 1045 (9th Cir. 1997). Disgorgement of fees received is the expected and

proper remedy to be applied when debtor's attorney has failed to comply with bankruptcy statutes

and rules. *In re Redding*, 251 B. R. 547 (Bankr. W.D. Mo. 2000).  Specifically, fees may be

disallowed and the court may order return of fees already paid if a professional hired under § 327 is no longer disinterested. *In re Jennings*, 199 Fed. Appx. 845 (11th Cir. 2006) (having determined that actual and potential conflicts of interest existed for law firm representing eleven Chapter 11 debtor clients, bankruptcy court was well within its discretion to conclude that firm's initial and continuing violation of disclosure rules, coupled with its lack of disinterestedness, warranted its disqualification in all related cases, denial of all compensation, and disgorgement of any pre-petition retainer). *See Matter of Prudhomme*, 43 F. 3d 1000, 1003 (5th Cir. 1995) ("the court's broad discretion in awarding and denying fees paid in connection with bankruptcy proceedings empowers the bankruptcy court to order disgorgement as a sanction to debtors' counsel for nondisclosure.")

One purpose of disgorgement features of bankruptcy attorney fee statutes is to protect debtors from overreaching by attorneys. *In re Sturgeon*, 242 B. R. 724 (Bankr. E.D. Okla. 1999). Failure to make adequate disclosure of conflicts can result in the forfeiture of fees actually earned. *See, e.g., In re Woodward*, 229 B. R. 468 (Bankr. N.D. Okla. 1999) (failure of debtor's attorney to properly disclose compensation was, in and of itself, grounds for disgorgement without regard to reasonableness of fees or whether attorney may have earned fee by performing valuable services).

Section 327 permits the employment of attorneys who "do not hold or represent an interest adverse to the estate, and that are disinterested persons." *In re Keller Financial Services of Florida, Inc.*, 248 B. R. 859 (Bankr. M.D. Fla. 2000). Although the phrase "interest adverse to the estate" is not defined in the Bankruptcy Code, it is generally found that a person holds or represents such an interest if he possesses an "economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant ... or ... a predisposition under the circumstances that render such a bias against the estate." *In re Prince*, 40 F. 3d 356, 361 (11th Cir. 1994) (citations omitted).

-22-

Under section 328(c) of the Bankruptcy Code, a court is authorized to deny compensation if an adverse interest appears. *In re Keller Financial Services of Florida, Inc.*, 248 B.R. at 893. The Eleventh Circuit has concluded that "[i]n exercising the discretion granted by the statute we think the [bankruptcy] court should lean strongly toward denial of fees, and if the past benefit to the wrongdoer fiduciary can be quantified, to require disgorgement of compensation previously paid that fiduciary even before the conflict arose." *Id.* (citing *In re Prince*, 40 F. 3d at 360 (quoting *Gray v. English*, 30 F. 3d 1319, 1324 (10th Cir. 1994))).

It is clear from the proceedings so far in this case that Franken's interests are adverse to the Debtor. During the course of these proceedings, Franken has simultaneously represented various parties adverse to the Debtor, including MGSI, Letterese, and Fawcett, while purporting to represent the Debtor as Chapter 11 counsel, and thereafter represented Letterese and Fawcett in actions adverse to the Debtor's estate.

Disallowance of fees is appropriate when an attorney is found not to be disinterested. *In re Prince*, 40 F.3d 356 (11th Cir. 1994) (complete denial of attorney fees and disgorgement of fees received was warranted for law firm's representation of Chapter 11 debtor in bankruptcy proceedings, given intolerable conflicts of interest resulting from law firm's prior representation of debtor and nondebtor spouse in estate planning matters, prior representation of debtor's corporation, and postpetition representation of debtor's spouse in suit on guaranty); *see also In re Rusty Jones, Inc.*, 134 B. R. 321, 347 (Bankr. N.D. Ill. 1991) (*citing Wolf v. Weinstein*, 372 U.S. 633, 641 (1963) (**"a fiduciary may not receive compensation for services tainted by disloyalty or conflict of interest"**)).

The record evidence and this Court's findings support the conclusion that Franken was not disinterested at the time he was employed (on a limited basis) to represent the Debtor. This lack of

disinterested ness supports, and indeed requires, a disgorgement of fees and a disallowance of any additional fees that Franken may have otherwise earned for services he rendered allegedly on behalf of the Debtor.

**E.      Franken has failed in his duty of candor toward this Court**

An attorney's duty of candor to the tribunal is well-established in the Eleventh Circuit. The duty owed by attorneys is one of complete candor and primary loyalty to the court before which they practice, and an attorney's duty to the client can never outweigh his or her responsibility to see that the American system of justice functions smoothly. *In re Cummings*, 381 B.R. 810 (S.D. Fla. 2007); *Footman v. Cheung*, 341 F. Supp. 2d 1218 (M.D. Fla. 2004). Florida Bar Rule 4-3.3 provides, in pertinent part:

> A lawyer shall not knowingly:
>
> (1) make a false statement of material fact or law to a tribunal;
>
> (2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;
>
> (3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or
>
> (4) permit any witness, including a criminal defendant, to offer testimony or other evidence that the lawyer knows to be false. A lawyer may not offer testimony that the lawyer knows to be false in the form of a narrative unless so ordered by the tribunal. If a lawyer has offered material evidence and thereafter comes to know of its falsity, the lawyer shall take reasonable remedial measures.

Franken violated his duty of candor to the Court by, among other things, (i) failing to candidly disclose the extent of MGSI's purported interest in the Debtor and the Debtor's assets; and (ii) filing the Restatement Memorandum falsely purporting to transfer all of the Debtor's intellectual property rights.

The Florida Bar's Standards for Imposing Lawyer Sanctions provides, at ¶ 7.1, that "Disbarment is appropriate when a lawyer intentionally engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system." It would therefore be difficult to argue that the sanctions imposed in this matter are excessive given Franken's conduct.

**F.      Franken violated his duty of independent professional judgment by ceding his independent professional judgment to Letterese.**

Counsel for a debtor in possession has a fiduciary duty to the estate, requiring that he or she exercise independent professional judgment on behalf of the estate. *Jensen v. United States Trustee (In re Smitty's Truck Stop, Inc.)*, 210 B. R. 844, 850 (10th Cir. BAP 1997); *see Interwest Bus. Equip., Inc. v. United States Trustee*, 23 F. 3d 311, 316 n. 9 (10th Cir. 1994) (debtor in possession is also a fiduciary of the estate). Failure to properly exercise that independent professional judgment may result in a total denial of fees. *Smitty's Truck Stop*, 210 B. R. at 850. Counsel's fiduciary duty includes its responsibility to disclose any actual or potential conflicts of interest with the estate.

The record evidence and this Court's findings of fact support the conclusion that Franken violated his duty of independent professional judgment to the Debtor by, among other things, ceding his professional judgment to Letterese, blindly filing papers on behalf of or adverse to the Debtor without conducting independent diligence into the factual and legal veracity of such filings, by representing the Debtor while laboring under a severe conflict of interest, and by representing other parties materially adverse to the Debtor in this Bankruptcy Case.

## ORDER

Based upon the foregoing findings and conclusions, it is **ORDERED**:

1.      The Motion for Sanctions is **GRANTED**.

-25-

2.    Franken's Final Fee Application is **DENIED**.

3.    Franken shall account for and disgorge to the Trustee on behalf of the Estate all fees paid to him by the Debtor, or on behalf of the Debtor, within thirty (30) days of the entry of this Order. Franken shall further submit an affidavit to the Court attesting to the amount of those fees and the date such payment was made to Franken. This affidavit shall include a representation by Franken that he has received no further payment, remuneration, or compensation of any kind in connection with this Bankruptcy Case.

4.    Franken shall not further represent any party in interest in connection with this bankruptcy case or any adversary proceeding filed in this bankruptcy proceeding or in any matter substantially related to the issues raised in these proceedings in this or any other forum.

5.    The Court awards monetary sanctions jointly and severally against Franken and Charles D. Franken, P.A., and in favor of the Debtor's Estate, in the amount of $92,514.00, representing a reasonable sum of attorneys' fees and costs incurred by the Estate in investigating and responding to deadlines and in connection with unauthorized frivolous pleadings.

6.    The Trustee shall file an affidavit within 14 days of the entry of this Order attesting to fees incurred in connection with prosecuting the Motion for Sanctions.

7.    Franken is hereby **SUSPENDED** from the practice of law in the United States Bankruptcy Court for the Southern District of Florida, effective 30 days from the date of this Order. Franken shall give notice to each of his clients with matters pending in this Court of his suspension within 20 days of the date of this Order.

8.    The Clerk is hereby **DIRECTED** to terminate Franken's CM/ECF privileges, and to refuse to accept (and to return) any pleading filed by Franken in this Court on behalf of a client, both effective 30 days from the date of this Order.

9.    Franken may reapply for admission to practice before this Court no earlier than 180 days from the entry of this Order by filing a pleading in this case seeking such admission and showing that he has completed at least 30 continuing legal education credits in ethics after the commencement of his suspension.

10.   The Court reserves jurisdiction to enforce this Order.

# # #

Copies furnished by CM/ECF to:

      John H. Genovese, Esq.
      Charles D. Franken, Esq.
      Office of the United States Trustee

The Clerk of this Court is directed to provide copies to:

      Hon. Paul G. Hyman
      Hon. A. Jay Cristol
      Hon. Robert A. Mark
      Hon. Raymond B. Ray
      Hon. Laurel Myerson Isicoff
      Hon. Erik P. Kimball

      John T. Berry, Esq.
      The Florida Bar
      651 E. Jefferson Street
      Tallahassee, FL 32399-2300

      Adria E. Quintela, Esq.
      The Florida Bar
      Lake Shore Plaza II
      1300 Concord Terrace, Suite 130
      Sunrise, FL 33323

Attorney Genovese is directed to serve a copy of this Order upon all other parties in interest.